THE MAYOR, RECORDER, ALDERMEN AND COMMON COUNCIL OF
GEORGETOWN ET AL.

*vs.*

JAMES M. PORTER, SECRETARY OF WAR, AND WILLIAM
TURNBULL, CORPS TOPOGRAPHICAL ENGINEERS.

EQUITY.   DECIDED JULY 7, 1843.

*Suit for Injunction.*

| | |
|---|---|
| The act of Congress of March 3, 1841, putting the repairing of the bridge over the Potomac River between Washington city and Alexandria, under the direction | of the Secretary of War, left it to the discretion of the said officer as to the position of the draw, and the court has no authority to control that discretion. |

CLEMENT COX and R. S. COXE for corporation of George-
town.

· JOSEPH H. BRADLEY for the defendant Turnbull.

P. R. FFNDALL, district attorney, for the Secretary of War.

This was a suit brought by the complainants to enjoin the
defendants from proceeding further in constructing a draw-
bridge.   The complainants claimed they had a vested right
and interest in the draw-bridge, the said draw to be con-
structed and formed by the defendants, that the bridge com-
pany from whom the United States purchased the bridge
leading from Washington to Alexandria county, could not dis-
pose of the right the complainants had in the bridge, or to
cause the free navigation of the Potomac river to be obstruc-
ted by placing the site of the draw where the defendants are
placing it.   That placing the piers of the draw bridge where
they would obstruct the channel of the river is a nuisance.
That the Constitution of the United States cannot legalize
that which is liable to be peaceably abated by any citizen
affected thereby ; that it is the proper subject for a public
prosecution against all persons continuing, aiding or abetting
it, and for which every party sustaining a special damage
therefrom has a private and adequate remedy at law or in
chancery.

The motion for an injunction was argued by the several
counsel; after which the court made the following order :

This cause coming on to be heard on the bill and exhibits

and a motion of the complainants thereon for an injunction, it is thereupon by the court this 17th day of June, 1843, ordered that :

On the complainants, or some of them filing an injunction bond in the usual form and penalty of $15,000, with security approved by the court or a judge thereof, an injunction do issue as prayed to restrain said defendants, their agents and servants, from the further prosecution of the work of the draw complained of or of any part of the bridge occupying the site of the former draw of the bridge, or that recommended by William B. Thompson, in his report filed as an exhibit in this cause, until the first Monday in July next, and until the further order of the court in this case. And that meanwhile the defendants may file their answers, and each party take testimony before any justice of the peace, on two days notice to any one of the opposite parties, to be read in evidence at the final hearing of the cause; and that said cause may be by either party set down for final hearing on bill, answer and testimony, at said first Monday in July.

The Secretary of War, in his answer, after citing the following acts of Congress, of February 5, 1808, authorizing the incorporation of a bridge company ; of the 15th of May, 1830, authorizing the corporation of Georgetown to form a draw-bridge across the Potomac river, and appropriating $6,000 for that purpose ; of July 14, 1832, authorizing the purchase of the bridge from the said company ; of June 30, 1834, authorizing the Secretary of the Treasury to contract for its reconstruction ; of March 3d, 1835, amending the act of June 30, 1834 ; of June 7, 1836, authorizing the Secretary of the Treasury to repair the said bridge ; of July 1, 1836, authorizing the Commissioner of Public buildings to repair the said bridge ; of March 3, 1841, putting the repairing of the bridge under the direction of the Secretary of War, and of September 11, 1841, appropriating $15,806, to be expended under the direction of the Secretary of War, denied the jurisdiction of the court, but stated :

"That the jurisdiction over the roads and highways within

the District of Columbia within which the Potomac river is situated from the head of tide near Georgetown, to some distance below Alexandria, embracing the site of said bridge, is vested exclusively in the Congress of the United States. That Congress has had from the establishment of the District of Columbia, until the present time, the right to declare in what manner the said public roads and highways shall be used and enjoyed. That if the public convenience required it Congress had the power to direct the erection of a bridge on any stream or public water highway or even to place a dam or permanent obstruction across the same. That being a fit and proper matter for the exercise of legislative discretion which can not be called in question by any judicial tribunal.

"That Congress could either exercise this power itself or it could within the said District create a corporation for the purpose of making such bridge or dam, and permit them to receive in tolls a remuneration for the moneys expended in so doing.

"That any person owning property upon the stream above the place at which such bridge or dam should be erected, sustained any inconvenience from the navigation being impeded or the fish being prevented from ascending the stream in consequence of such bridge or dam, they are entitled to reasonable damage by reason of the premises, and the public have the right so to use the public highways as will best premote the public interest generally, of which the legislative power is the judge, and any inconvenience sustained by the owners of such property is one to which, from the nature of the property, they would naturally be subject, and of which they cannot complain. In the language of the law, it is *damnum absque injuria.* For the correctness of these views, the undersigned refer to the following adjudged cases:*

McClenachan *vs.* Curwin, 3 Yates, Penn. R., 373. [1]

McClenachan *vs.* Curwin, 6 Binney, Penn. R., 504. [2]

Nebenoth *vs.* The Lehigh Coal & Navigation Co., 7 Hazard Penn. Register, 292. [3]

Shrunk *vs.* The Schuylkill Navigation Co., 14 Serg. &

Rawle, Penn. R. 71.[4]

Commonwealth vs. Shaw ; Ibid, 12.

Zimmerman vs. The Union Canal Co., 1 Walls. & Serg., Penn. R., 346.[5]

Commonwealth vs. Charleston, 1 Pick. Mass. R., 1806.

" The undersigned claims the right for the Secretary of War, acting as such for the United States, and solely as the representative of the United States, to decide all questions in relation to the construction of the repairs of the said bridge. That this is not a ministerial but a judicial act, and that although in matters submitted to his discretion, the proper judicial tribunal may, if he fail to act·in the premises as directed by law, compel him by mandamus or otherwise to proceed to act, there is no authority in any tribunal to direct him how to exercise the discretion·committed to him by law. That in the present instance the discretion is so committed to him, and consequently the court has no authority in the premises.    In illustration of this principle, it may be reminded that if this court should enjoin the undersigned from proceeding in the repair of the said bridge, and thus stop the completion of the said bridge, which is necessary and imperatively required for the public convenience, because the court would be of a different opinion from the undersigned as to the proper location of the said draw.    Who, then, is to decide where the *draw* is to be placed?    The undersigned having formed his opinion deliberately upon the matter, would not be likely to change that opinion.    The bridge being suspended, the next application would probably be by the Corporation of Washington city to your honors for a mandamus to compel the undersigned to proceed to the completion of the bridge, in the course of which proceeding your honors would be called upon to enact the part of engineers, and declare where the said draw shall be constructed, a power which with all due deference this court neither possesses nor would attempt to exercise.

" It thus appears most conclusively to the undersigned that the court has no jurisdiction of this matter independent of the great and important question that this is an attempt to bring the United States into court and make them a party

to the cause. The undersigned has done no act, neither has Major Trumball, the officer in charge of the work, except in their official character and strictly in the exercise of their official duties as officers of the Government of the United States.

And the undersigned, as the head of one of the Executive Departments of the Government of the United States, does hereby most solemnly protest against this or any other attempt to bring the actions of the official functionary as the head of such department before any judicial tribunal for review; he claims the right, which he will never surrender so long as he remains in the public position he occupies, to exercise his own judgment in the discharge of duties submitted by law to his discretion, uncontrolled by any other tribunal in the country not expressly authorized by statute to control or overrule him.

The defendant, Major Trumbull, through his counsel, in his answer, denied the allegations of the bill, and stated that there is no part in said bridge in which said draw could be placed to which objections equally strong with those already urged could not be made.

The counsel for the complainants in closing the argument on the bill, answers and exhibits, said that neither the United States, the Secretary of War, nor Mr. Trumbull has any interest directly or indirectly in the position of the draw, whilst the very existence of Georgetown, as a port of entry, depends on the free and uninterrupted navigation of the river. The original act of Congress, and all other acts, never repealed the vested rights of Georgetown. If any discretion had been reposed in the Secretary, it is neither judicial in its character nor executive. The legislature had framed a law which requires agents to execute it; such agents, therefore, are the agents of the legislature, to perform its functions. The parties are the mere agents of the law. If the corporation of Georgetown are proved to be incapable of forming a correct judgment, why then the matter is at an end.

Chief Judge CRANCH pronounced the decision of the court, Judge MORSELL dissenting.

A majority of the judges are of opinion that the corporation of Georgetown has not shown any vested right which is violated, or will be violated, by the repairing of the Potomac bridge or the location of the draw, according to the plan approved by the Secretary of War. That the whole matter as to the manner of repairing the bridge was submitted by Congress to the Secretary of War, and this court has no authority to control that discretion. That the draw appears by all the charts to be placed over the deepest part of the channel; and it is not clear, from the evidence, that its location is not the most judicious which could be made.

Judge Morsell stated that his disagreement with the majority of the judges, he being a citizen of Georgetown, placed him in a very delicate situation; and if he could, by any small concession of principle, agree with them, he would have done so. He considered the question of vested rights one of minor importance. The Secretary of War, he thought, had transcended his limits, and exceeded the authority given him by the law; and therefore Georgetown had a common right to claim the protection of Congress to preserve the free navigation of the river. He hoped the case would be carried to the Supreme Court to have the question, whether the rights of Georgetown were entitled to protection, decided for all future time.

The court dismissed the bill and dissolved the injunction.

---

1. The act of the legislature applying a certain portion of every man's land for the purpose of laying out roads and highways without compensation, is not an infringement of the constitution.

2. The Commonwealth has a constitutional right to authorize a turnpike company to lay out a road through the private ground of the citizen without making compensation for the soil.

3. The State had a right to give the streams to whom they please for the purpose of improving the navigation, and could either improve them themselves or permit companies or individuals to improve them for the use of the public and themselves, authorizing them to be compensated for so doing by the tolls to be received.

4. Damages cannot be claimed for injury to individuals by the erection of a dam by the defendants under the act of assembly.

5. No private action will lie for public nuisance without special damage.

6. The court of sessions have no authority to lay out a highway over a navigable river.

The legislature alone have that power, Charlestown *vs.* Middlesex, 3 Met. Mass., 202, and others cited in Minor's Digest, Mass.